UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | No. 07 C 7040 |
| v. ) | |
| ) | Judge Grady |
| FABIO CARANI ) | |

### RESPONSE OF THE UNITED STATES TO SECTION 2255 PETITION

Defendant Fabio Carani alleges that his trial and appellate counsel were ineffective, claiming nine deficiencies in their performance. None of defendant's arguments has any merit. The government therefore requests that defendant's Section 2255 petition be denied.

### I. FACTUAL BACKGROUND

**A.   Defendant's Conviction**

Defendant Fabio Carani used a file-sharing program called Kazaa to download child pornography from the Internet. In October 2005, in Case No. 05 CR 150, he was charged with one count of knowingly possessing child pornography and two counts of knowingly receiving child pornography. Defendant was convicted by a jury of the possession count (the jury acquitted defendant on one of the receipt counts, and could not reach a unanimous decision as to the other), and his conviction and sentence were affirmed by the Seventh Circuit in *United States v. Carani*, 492 F.3d 867 (7th Cir. 2007). The Seventh Circuit's published opinion, attached to defendant's Section 2255 petition as Exhibit 1, recounts the facts of the case and much of the evidence at trial.[1]

---

[1] The government disagrees with many aspects of defendant's "Statement of the Facts," at pages 5 to 19 of his brief. Because those disagreements are not relevant to disposition of defendant's Section 2255 petition, however, the government does address them here. If the Court desires, the government will supplement this response with a detailed statement of facts.

**B.    The Appeal**

On appeal, defendant advanced three arguments: (1) this Court abused its discretion in giving the jury the ostrich instruction; (2) in answering a question from the jury, this Court gave a supplemental instruction concerning possession of child pornography that incorrectly stated the law, and allowed the jury to convict defendant without finding sufficient knowledge; and (3) this Court improperly enhanced defendant's sentence by two levels based on his distribution of child pornography via Kazaa. The Seventh Circuit rejected all of defendant's arguments. *Id.*[2/]

**C.    The Section 2255 Petition**

Defendant timely filed a Section 2255 petition on or about December 14, 2007, asserting nine variations of alleged ineffective assistance of counsel:

(A)    Failing to inform defendant of the risks of proceeding to trial, versus accepting a plea proposal from the government, and failing to inform defendant of or discuss with him the government's plea proposal;

(B)    Failing to discover and use a 2006 report (or similar information) about file-sharing programs that would allegedly have supported defendant's theory of the case;

(C)    Failure to challenge the constructive amendment of the indictment that supposedly occurred when the Court gave a supplemental instruction to the jury concerning possession;

(D)    Failure to argue that the supplemental jury instruction resulted in a general verdict;

(E)    Failure to inform defendant of the risks of testifying, and that the decision to testify was defendant's decision;

(F)    Failure to present sufficient information to the Court to alter the Court's decision to impose a two-level enhancement for distribution of child pornography;

---

[2/]    Defendant requested that the Seventh Circuit recall its mandate so that he could petition for rehearing. The Seventh Circuit ultimately denied defendant's request for rehearing and issued its mandate, in an order dated on or about September 13, 2007.

(G) Failing to argue that the sentencing violated defendant's Fifth and Sixth Amendment rights, because the Court imposed enhancements based on conduct not alleged in the indictment and not proved to the jury beyond a reasonable doubt;

(H) Failure to challenge the five-level enhancement for defendant's possession of at least eight child pornography videos; and

(I) Failure to challenge the sufficiency of the evidence.

## II. LEGAL STANDARDS

Section 2255 permits relief only in limited circumstances, such as when there has been "an error of law that is jurisdictional, constitutional, or constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *Harris v. United States*, 366 F.3d 593, 594 (7th Cir. 2004) (citation omitted). Where the basis of the Section 2255 petition is ineffective assistance of counsel, there is a two-part test, from *Strickland v. Washington*, 466 U.S. 668 (1984):

> First, petitioner "must show that counsel's representation fell below an objective standard of reasonableness." "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Second, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." "A reasonable probability is a probability sufficient to undermine confidence in the outcome."

*Gallo-Vasquez v. United States,* 402 F.3d 793, 798 (7th Cir. 2005) (citations omitted). The petition should be denied if petitioner cannot show either prejudice or ineffective assistance, and the Court need not address both points if one is clearly inadequate. *Richardson v. United States*, 379 F.3d 485, 487-88 (7th Cir. 2004).

In order for a hearing on a Section 2255 petition to be granted, "the petition must be accompanied by a detailed and specific affidavit which shows that the petitioner had actual proof of the allegations going beyond mere unsupported assertions." *Kafo v. United States*, 467 F.3d 1063, 1067 (7th Cir. 2006); *see also Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007)

(evidentiary hearing unnecessary in all cases); *Gallo-Vasquez*, 402 F.3d at 797 ("A district court may dismiss a §2255 motion without holding a hearing or requiring the government to respond if 'the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.'"); *Galbraith v. United States*, 313 F.3d 1001, 1009 (7th Cir. 2002) (where defendant supplied no detailed affidavit supporting his claims concerning attorney's conduct, it was not clear error for district court to deny Section 2255 petition without a hearing).

### III. ARGUMENT

Each of the arguments raised by defendant is insufficient for relief under Section 2255. Because defendant has not submitted an affidavit, and because the record further shows that there are no legitimate or material factual disputes, there is no need for a hearing.

**A.  Defendant Cannot Show Any Prejudice from Defense Counsel's Alleged Failure to Inform Him of the Risks of Proceeding to Trial and Testifying, or Failure to Discuss Plea Options with Him**

In Grounds (A) and (E),[3] defendant asserts that his trial lawyers failed to inform him of certain risks, including the risks of proceeding to trial and testifying. He claims that if he had known the risks of going to trial, he would have pled guilty. Further, he states that if he had known the risks of testifying, he would have remained silent. Def.'s Mem. at 20-22. Defendant submits no affidavit supporting these assertions. *Kafo*, 467 F.3d at 1067-69 (submission of detailed affidavit is "threshold requirement," and courts should not commit judicial resources to hearing on unsupported allegations). Even if defendant had submitted an affidavit, however, Grounds (A) and (E) should still be denied, because the record as a whole shows that defendant's arguments lack merit.

---

[3]  The government refers to defendant's arguments as listed in Grounds (A) through (I) in defendant's petition, and above at pages 2-3.

**1.    Defendant Cannot Show Prejudice Based on Counsel's Alleged Failure
to Inform Him of the Risks of Going to Trial**

Assuming for the sake of argument that defense counsel in fact advised defendant to reject a plea offer, as defendant contends, defendant still would be unable to prove that such advice was unreasonable. When defense counsel advises a defendant to reject a plea offer, "his performance is not objectively unreasonable unless such advice is made 'in the face of overwhelming evidence of guilt and an absence of viable defenses.'" *Almonacid*, 476 F.3d at 521. Although the government stands behind each of the three charges in the superseding indictment, at trial the jury convicted defendant of only one count; the jury acquitted defendant on Count Three and hung as to Count Two. As such, even the government cannot credibly claim at this juncture that it would have been unreasonable for defense counsel to recommend that the case be tried.

The Court need not determine what advice defense counsel actually gave on this point, however, because even if defense counsel acted as defendant contends, there was no prejudice to defendant.[4/] Defendant says the prejudice is that he would have pled guilty if his counsel had explained the risks of going to trial; but the record is replete with evidence to the contrary. Throughout trial and during his allocution at sentencing, defendant Carani maintained that he was totally innocent of all the charges. He took the stand and testified at trial, denying searching for, downloading, and keeping child pornography on his computer, claiming instead that any child pornography appearing on his computer got there accidentally and without his knowledge. At sentencing, when asked if he had anything to say, defendant continued his steadfast denials:

---

[4/]    The government has not solicited affidavits from trial or appellate defense counsel at this stage, because defendant himself has submitted no detailed affidavit. If the Court requires such affidavits, the government will supplement its response.

> THE DEFENDANT:  . . . All I can tell you is what happened was – you heard what happened, and I told you what happened, and when I told these people that this stuff kept on coming up, maybe I should have stopped, but I didn't think nothing of it. I just thought if they come up again, I'll just delete it and it's no problem. . . . And I cannot tell you enough – and my fault, and I'll admit that I have looked up a lot of adult pornography, a lot. And, again, working two jobs, when I came home, I downloaded a whole bunch of stuff and then just let it go for days because some of it took forever to download. And when it came up, I never even knew what I got until I opened it because more than 50 percent of the time, the title didn't match the description. So when it was ready, let's say two days later, I would open them up and delete it. And they would keep on popping up. And I had no idea that I even had it, and then they said I had this one Segundo. But even with the name, how – without opening it, how do you know what it is? But they were never my intentions to do that.
>
> And I know you made your rulings on what you did, but I never had any – no clue on how to distribute this stuff, and I had no intention of keeping it. I don't know how this Segundo came up, they told me it was there, and from what I remember, it had an access date of 9/03 when I was in the police department. I don't know if it came up at that time or whatever it was, but I'm sorry, I'm being blamed for stuff that I did not do. It's your opinion if you believe me or not, but I don't know how else to tell you. I am telling you the truth. I didn't know this stuff. If it was important to me, wouldn't I have more?
>
> The only thing I knew was My Kazaa Lite section. That's the only thing I knew, the only thing. I swear to you, that's the only thing I knew. This happened at this Segundo have happened to have been there. I can't explain it. I can't explain any of it. . . . R. 129 at 80-81.

Whatever discussion defense counsel did or did not have with defendant about the risks and benefits of proceeding to trial, defendant's own conduct at trial and sentencing makes clear that he would not have acknowledged committing any of the crimes charged against him in the indictment. *Cf. Gallo-Vasquez*, 402 F.3d at 798-99 (motion and exhibit undercut defendant's theory that he would have pled guilty but for counsel's advice, so no hearing was necessary).

Moreover, as a practical matter, defendant's request – that the Court vacate his sentence and allow him either to accept a plea agreement from the government or plead blind – makes no sense. Def.'s Mem. at 23. Even if the Court granted this relief, the result is unlikely to be any different. To plead guilty, defendant would have to admit that he knowingly possessed or received child

pornography. This would be an acknowledgment that he perjured himself at trial and sentencing, and he would still receive the obstruction enhancement. Likewise, without full acceptance of responsibility for his conduct, defendant would not receive two levels off. He certainly would not receive a third point off for timeliness of plea, given the circumstances. And finally, the defendant's Guidelines range at sentencing far exceeded the statutory maximum of 120 months. Even so, the Court did not sentence defendant to 120 months, but instead sentenced him to six years, which was a significant downward variance from the Guidelines. There is no reason to conclude that on a resentencing, where defendant was pleading guilty on this record, that this Court would deviate even further from the Guidelines than it already did. Thus, even if defendant could demonstrate that his counsel were ineffective in advising him about his trial rights, he cannot demonstrate prejudice.

### 2.  Defendant Cannot Show Prejudice Based on Counsel's Alleged Failure to Inform Him of the Risks of Testifying

Second, defendant claims his trial lawyers never told him that it was solely his decision whether or not to testify, and never told him that his testimony could be used to enhance his sentence if he were found guilty. Def.'s Mem. at 37-38. This claim fails, because whether or not counsel informed defendant that it was solely his decision to testify, he has not alleged, and cannot show, that the two-level obstruction enhancement he received was linked to his lawyers' advice. Defendant received a two-level enhancement for obstruction of justice at sentencing, not simply because he testified – but because he testified *falsely* under oath. The oath to tell the truth was no secret; he was sworn in by this Court's deputy, in open court, before his testimony. Tr. 692. Defendant does not claim, nor could he, credibly, that defense counsel advised him to take the stand and lie. That was defendant's choice, and he rightly received a sentencing enhancement for that conduct. Had defendant testified truthfully, there would have been no enhancement for obstruction

of justice. The harm that came to defendant had nothing to do with his attorneys' advice: it came from his own decision to lie under oath. Consequently, even if defendant could show that defense counsel did not advise him fully about the risks of testifying, he cannot show any resulting prejudice.

**B.    Defense Counsel Mounted a Vigorous Defense Concerning Kazaa Technology, And Defendant Cannot Show Prejudice**

In Ground (B), defendant claims that his counsel failed to discover information about file-sharing programs like Kazaa that would allegedly have supported defendant's theory of the case. He points, in particular, to a 2006 Report to the U.S. Patent and Trademark Office (Exhibit 6 to defendant's petition), arguing that such data would have helped him secure an acquittal on Count One at trial. There are two significant problems with defendant's argument.

First, contrary to defendant's characterization of the 2006 Report, nothing in the Report suggests that file-sharing programs cause a computer automatically or inadvertently to ***download*** or otherwise acquire files from the Internet. Instead, the Report addresses the issue of distribution, stating that some file-sharing software is configured such that users do not know they are sharing files that they already have on their computer. As defendant himself points out, his conviction in this case is not for distribution; it is for knowingly possessing child pornography on his computer. Nothing in the 2006 Report would have helped defendant counter the possession charge.[5]

Second, even if defendant's presentation at trial did not include the specific data contained in the 2006 Report, there is no prejudice, because defendant's expert witness, Scott Ellis, went way beyond the contentions in the 2006 Report. Ellis criticized the Kazaa file-sharing program, and claimed in his testimony that child pornography appeared on defendant's computer via a virus, a

---

[5]    Moreover, the government submitted ample evidence at trial demonstrating that defendant did, in fact, know that Kazaa was a file-sharing program, and that he was making certain child pornography files available to others for download. As a result, information in the 2006 Report would not have helped the defendant.

worm, a remotely located pedophile, a break in the machine, and/or the Kazaa software itself. Tr. 492, 505, 509, 527, 567, 600-01.[6/] In closing arguments, defense counsel thoroughly pursued these themes, arguing that defendant was blameless in acquiring child pornography on his computer, and that the Kazaa software itself was largely responsible for making the child pornography appear.

The government's position at trial was that Ellis was unqualified to give any expert opinion, that there was no forensic or industry support for his opinions, and that his testimony had no legitimate basis. Nevertheless, on the issue of whether counsel were ineffective for failing to present the jury with information about potential problems with file-sharing software, defense counsel helped defendant mount a vigorous – if ultimately unsuccessful – defense.

Thus, defense counsel's conduct in retaining and presenting an expert witness who opined that there were problems with the Kazaa software on defendant's computer and other technological issues, such as potential viruses or "worms," that could have caused the child pornography to enter defendant's computer without defendant's knowledge, was well within the bounds of reasonable professional assistance. Defense counsel did not ignore the technical and forensic issues in the case, but instead hired an independent person with some knowledge in the computer field to examine the government expert's opinions and present a contrary view.

Moreover, defendant cannot show, as he must, that the outcome of the proceedings would be different if the information in the 2006 Report had been used and presented at trial. Defendant was convicted of knowing possession of child pornography, not distribution, and the 2006 Report

---

[6/]   For instance, Ellis testified that when he used a copy of defendant's version of Kazaa during testing, one of the files "disappeared." Tr. 481. He said that such disappearances were "typical." *Id.* He further told the jury, "It certainly is possible that there was a worm of some sort that was throwing these [child pornography videos] into files on to this machine." Tr. 527. Ellis also said that it was also possible that the software was broken or otherwise not functioning. *Id.* He added, "It's also possible that the software was completely rogue, it was just doing its own thing." *Id.*

contains no information even suggesting that child pornography files (or any kinds of files) can appear on a person's computer without their actively acquiring such materials. Also, the trial evidence included defendant's confession to knowingly seeking and downloading child pornography, as recounted by the special agents who interviewed defendant, and as corroborated by defendant's handwritten statement, further undercutting the relevance of any generic industry reports.

**C.     Defendant's Arguments About "Constructive Amendment" and "General Verdict" Ignore the Seventh Circuit's Decision in this Case**

In grounds (C) and (D), defendant claims his counsel were ineffective for failing to challenge the constructive amendment of the indictment that supposedly occurred when the Court gave a supplemental instruction to the jury concerning possession, and for failing argue that the Court's supplemental jury instruction resulted in a general verdict. Both of these arguments seek to recast the defendant's complaints about the Court's supplemental jury instruction, which was upheld by the Court of Appeals. This is improper, because defendant is not permitted to relitigate what he already lost on direct appeal. *Varela v. United States*, 481 F.3d 932, 935 (7th Cir. 2007) ("Issues that were raised on direct appeal may not be reconsidered on a § 2255 motion absent changed circumstances."); *see also McCleese v. United States*, 75 F.3d 1174, 1177 (7th Cir. 1996) (Section 2255 motion is "neither a recapitulation of nor a substitute for a direct appeal"); *Olmstead v. United States*, 55 F.3d 316, 319 (7th Cir. 1995) (issues that were raised on direct appeal may not be reconsidered on a Section 2255 motion absent changed circumstances).

Moreover, focusing on defendant's designation of his current complaints about the supplementary jury instruction as ineffective-assistance claims, such complaints fail because defendant cannot show prejudice, as he must to succeed. As the Seventh Circuit held, the Court's

supplemental jury instruction ***benefitted*** the defendant, and "could not have harmed [him]." *Carani*, 492 F.3d at 875. Defense counsel cannot be deemed ineffective for failing to object to something that helped the defendant. Therefore, defendant's grounds (C) and (D) should be denied.

**D.  Sentencing Was Conducted Properly, and Defendant Cannot Reargue His Sentencing Enhancements**

First, the Court can quickly dispense with Ground (G), which challenges the sentencing process as a whole. Defendant claims his counsel were ineffective because they failed to argue that the sentencing violated defendant's Fifth and Sixth Amendment rights, because the Court imposed enhancements based on conduct not alleged in the indictment and not proved to the jury beyond a reasonable doubt. The Seventh Circuit has repeatedly held that, after *Booker* and *Cunningham,* it remains proper for a trial judge to find sentencing facts by a preponderance of the evidence. *United States v. Santiago*, 495 F.3d 820, 824 (7th Cir. 2007); *United States v. Roti*, 484 F.3d 934, 937 (7th Cir. 2007). Claims to the contrary are frivolous, *United States v. White,* 472 F.3d 458, 464 (7th Cir. 2006), and therefore provide no basis for relief under Section 2255.

Second, defendant challenges his counsel's performance as to two specific sentencing issues: (1) failure to present sufficient information to the Court to alter the Court's decision to impose a two-level enhancement of defendant's offense level for distribution of child pornography (Ground (F)); and (2) failure to challenge the five-level enhancement for defendant's possession of at least eight child pornography videos (Ground (H)).

**1.  Defense Counsel Professionally Assisted Defendant Concerning the Distribution Enhancement**

Defendant argued on direct appeal that he should not have received the distribution enhancement, and the Court of Appeals upheld this Court's decision. *Carani*, 492 F.3d at 875-76

...

(finding that sharing child pornography via Kazaa constitutes "distribution" under the Guidelines, and ruling that district court's decision that defendant knew others were downloading child pornography files from defendant was "not clearly erroneous"). As such, defendant should not be permitted to relitigate what he already lost. *Varela*, 481 F.3d at 935.

Defendant's effort to re-label his complaints about the distribution enhancement as ineffective-assistance claims does not help him. He claims counsel were ineffective because they did not remind the Court about Agent Sapper's trial testimony, and they should have informed the Court about problems with file-sharing programs that induce users to share files. Def. Mem. at 39. The record, however, shows that defense counsel thoroughly addressed the distribution enhancement at sentencing, arguing: there was no evidence that defendant intended to distribute child pornography; the evidence showed that defendant was not intentionally distributing such material; and defendant had no idea that things were being transmitted from his computer. R. 129 at 13-39. Defense counsel's arguments encompassed both of the points that defendant now asserts counsel failed to make. As such, defendant has not rebutted the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Gallo-Vasquez*, 402 F.3d at 798.

Defendant also argues that counsel were ineffective for failing to argue that imposition of both the distribution and computer enhancements constituted double counting. Def. Mem. at 40. This argument is frivolous. Double counting does not occur when a court "imposes enhancements that involve overlapping, but not identical, conduct." *United States v. Shearer*, 479 F.3d 478, 484 (7th Cir. 2007). Here, although defendant's distribution of child pornography and use of a computer involved overlapping conduct, the conduct was not identical. Distribution of child pornography does

not always occur via computer. For instance, child pornography can be distributed through magazines or printed photos that are sent by mail. Distribution by computer is more harmful than distribution by other methods, because transmission can be practically instantaneous, and it is easy to reach many people all over the world with little effort. As such, distribution and use of computer are two separate harms that the Commission appropriately treats as separate specific offense characteristics. *United States v. Johnson*, 221 F.3d 83, 99 (2d Cir. 2000) (application of enhancements for both distribution and use of computer did not constitute double counting, because "[o]ne can traffic in child pornography without using a computer much like one could commit a robbery without the use of a gun"). Counsel's failure to raise the double-counting argument – a likely loser – cannot be construed as ineffective assistance. *Stone v. Farley*, 86 F.3d 712, 717 (7th Cir. 1996) ("Failure to raise a losing argument, whether at trial or on appeal, does not constitute ineffective assistance of counsel.").

    **2.**    **Defendant Misstates the Record Concerning the Number-of-Images Enhancement**

As to the enhancement for possessing more than 600 images (with each video counting as 75 images), defendant argues that the government stated at sentencing that only two or three videos on his computer contained child pornography. Def. Mem. at 45-47. The passages defendant cites are taken out of context. The government never stated, as defendant contends, that there were only two or three videos on defendant's computer containing child pornography. *Id.* The portion of the sentencing transcript that defendant cites has to do, instead, with a government exhibit that contained the names of files that had been ***deleted*** from defendant's computer. R. 129 at 43-44. The government offered that list at trial under Rule 404(b), to show that defendant was knowingly and intentionally selecting child pornography files to download, because the file titles of the deleted

items were strongly suggestive of child pornography. R. 46 (government's Rule 404(b) motion, addressing the relevance of the titles of deleted files to defendant's knowledge and intent); R. 61 (Court's Order, granting 404(b) motion). There was no evidence concerning the content of the *deleted* files, because those files no longer existed. Moreover, the actual content of those deleted files was irrelevant, because the only purpose of introducing them was to show that defendant had selected files, by title, that were named to reflect child-pornography content.

The sentencing enhancement for possessing more than 600 images was not based on the list of deleted files. Instead, that enhancement was based on the child pornography videos that *remained* on defendant's computer, and were not deleted. The record evidence showed that defendant's computer contained eight unique child pornography videos, and the government so stated at sentencing. R. 129 at 40. As a result, defense counsel were not ineffective for failing to argue that there was testimony regarding only two or three child pornography videos on defendant's computer. Such an argument would have been factually incorrect.

**E.     A Sufficiency-of-Evidence Challenge Would Have Been Fruitless**

In his final argument, Ground (I), defendant asserts that his appellate counsel was ineffective for failing to challenge the sufficiency of the evidence. But an appellate counsel is not required to raise weak arguments. Any argument that the trial evidence was insufficient to support the jury's conviction for defendant's knowing possession of child pornography would be highly unlikely to succeed. *Harris v. United States*, 366 F.3d 593, 596-67 (7th Cir. 2004) (rejecting ineffective-assistance-of-counsel claim for failing to raise argument that was not likely winner).

Courts give "heavy deference" to a jury's verdict, and it is therefore "exceedingly difficult" for a defendant to prevail on an insufficiency-of-evidence argument. *United States v. Caldwell*, 423

F.3d 754, 759 (7th Cir. 2005); *see also United States v. Emerson*, 501 F.3d 804, 811 (7th Cir. 2007) (defendant mounting challenge to sufficiency of evidence faces "uphill battle"). The question is "whether the evidence presented, when viewed in the light most favorable to the government, could support any rational trier of fact's finding of all the essential elements of the crime beyond a reasonable doubt." *United States v. Brown*, 328 F.3d 352, 355 (7th Cir. 2003); *see also Caldwell*, 423 F.3d at 759 (conviction should be overturned "only if the record is devoid of evidence from which a reasonable jury could find guilt beyond a reasonable doubt") (citation omitted). Proving that no such evidence exists poses "a nearly insurmountable burden" for the defendant, because the court's role is not to reweigh evidence or make credibility determinations. *Brown*, 328 F.3d at 355.

Under these standards, it was not unreasonable for appellate counsel to focus elsewhere. The trial evidence included, for example, defendant's confession to searching for, downloading, and keeping child pornography on his computer. This oral confession, as recounted by two federal agents, was corroborated by defendant's handwritten statement. Appellate counsel could not reasonably argue, therefore, that the trial record lacked any evidence to support the jury's verdict, as would have to be the case for an insufficiency argument to succeed. Likewise, even if counsel had advanced the insufficiency argument, defendant cannot show that the argument would have led to reversal of his conviction; thus, there is no prejudice.[7]

---

[7]    Even though the appeal did not specifically argue insufficiency of evidence, the Seventh Circuit articulated its view of the evidence when discussing this Court's appropriate decision to give the ostrich instruction to the jury: "The crux of Carani's argument at trial was that any child pornography videos he may have downloaded to his computer were downloaded solely through inadvertence. In addition to direct evidence that Carani in fact intended to download child pornography, such as statements he made to agents at the Highland Park Police Station, the government also presented evidence from which a jury could infer that Carani deliberately avoided confirming that certain files were in fact child pornography. Government witnesses testified that many files that were, or had once been, on Carani's computer had words associated with child pornography in the file names. Those file names, in addition to file descriptions and keyword listings, would have been displayed in the Kazaa search listings when Carani downloaded them. These words
(continued...)

## IV. CONCLUSION

The Government requests that defendant's petition be denied.

Dated: January 28, 2008                          Respectfully submitted,

                                                           PATRICK J. FITZGERALD
                                                           United States Attorney

                                     By:     s/ Julie B. Ruder
                                                           JULIE B. RUDER
                                                           Assistant United States Attorney
                                                           219 South Dearborn Street
                                                           Chicago, Illinois 60604
                                                           (312) 886-1317

---

[7/] (...continued)
indicating that the files contained child pornography were, quite literally, right in front of his face. Thousands upon thousands of references to child pornography were found on Carani's computer; and evidence, such as the hack used to boost his participation level, suggests that Carani was not so bungling a computer user as he suggested. The government presented evidence sufficient for the jury to infer that Carani suspected that files he was downloading and sharing with others contained child pornography, but deliberately pushed those suspicions aside in order to avoid confirming his criminal activities. The district court did not abuse its discretion by giving the ostrich instruction to the jury." *Carani*, 492 F.3d at 873-74.

**CERTIFICATE OF SERVICE**

      The undersigned Assistant United States Attorney hereby certifies that in accordance with FED. R. CRIM. P. 49, FED. R. CIV. P. 5, LR5.5, and the General Order on Electronic Case Filing (ECF), the following document:

      Response of the United States to Section 2255 Petition

was served pursuant to the district court's ECF system as to ECF filers, if any, and was sent by first-class mail on January 28, 2008, to the following non-ECF filers:

      FABIO CARANI
      Reg. No. 21827-424
      FCI Ashland
      P.O. Box 6001
      Ashland, KY 41105

                          s/ Julie B. Ruder
                          JULIE B. RUDER
                          Assistant United States Attorney
                          219 South Dearborn Street
                          Chicago, Illinois
                          (312) 886-1317