UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | No.  07 C 7040 |
| v.                                          ) | |
| ) | Judge Grady |
| FABIO CARANI                       ) | |

### SUPPLEMENTAL RESPONSE OF THE UNITED STATES
### TO SECTION 2255 PETITION

In Grounds 1 and 5 of his Section 2255 Petition, Carani argues that his trial counsel failed to inform him of the risks of going to trial and testifying. This Court's March 12, 2008 Order correctly observes that the government filed its initial response under the mistaken belief that Carani had not supported his petition with an affidavit. Having reviewed Carani's affidavit, the government now submits affidavits from Carani's trial attorneys, Carolyn P. Gurland and Dennis A. Berkson (attached as Exs. 1 and 2).  The government requests that the Court deny the remainder of Carani's petition.

### BACKGROUND

**A.     Risks of Going to Trial**

Carani asserts that his attorneys did not explain to him the risks of proceeding to trial versus pleading guilty.  Ex. 5 to Def.'s Pet. at ¶ 3. He maintains that counsel did not discuss with him or show him the government's proposed plea agreement; "Rather, counsel just told me not to take it [the plea] because I would be acquitted at trial." *Id.*  Carani also says that his lawyers did not tell him that his handwritten statement "amounted to an admission of guilt." *Id.*  He asserts that if his lawyers had "sat down and discussed the true risks of

proceeding to trial, I would have either accepted the government's plea agreement or entered a plea of guilty without the agreement." *Id.*

Carani's trial attorneys, Carolyn P. Gurland and Dennis A. Berkson, dispute Carani's assertions. Gurland and Berkson specifically recall meeting with Carani, showing him the government's draft plea agreement, and going over that agreement in detail. Ex. 1 at ¶ 2; Ex. 2 at ¶ 2. The draft plea agreement carried substantial jail time, and Carani therefore was not interested in the plea. *Id.*; *see also* Ex. 3 (draft plea agreement sent to defense counsel in April 2005, approximately four months before trial).[1] Carani "vehemently rejected the notion that he should spend so much time in prison when, according to Mr. Carani, he was innocent." Ex. 2 at ¶ 2.

Even though the plea called for a substantial sentence, Carani's attorneys told him there were many risks in going to trial. Ex. 1 at ¶ 3; Ex. 2 at ¶ 3. Among other things, the attorneys told Carani that it was impossible to predict whether they would win or lose, and it would be up to the jury to decide the case; child exploitation cases present emotional and difficult issues, and juries tend not to like defendants in such cases; the jury would likely see the child pornography videos at trial, and would hate the evidence; and Carani's handwritten statement was a "disaster" that would be difficult to overcome. *Id.*

---

[1] As reflected in the government's cover letter to Gurland, the plea agreement in question was a draft only, had not been approved by the U.S. Attorney's Office, and was subject to change. *Id.* Because subsequent discussions revealed that the parties were too far apart to reach an agreement, the government never presented Carani with a firm plea offer.

After discussing the risks with counsel, Carani chose to go to trial. Gurland and Berkson affirm that this was Carani's decision, not theirs; they never told Carani to reject a plea agreement, and they never told him he would be acquitted at trial. Ex. 1 at ¶ 4; Ex. 2 at ¶ 4.

Carani proceeded to trial; he was convicted on one count of knowingly possessing child pornography. The jury could not reach a unanimous verdict as to one count of knowingly receiving child pornography, and Carani was acquitted on the other receipt count. At sentencing, the guidelines range calculated by the Court exceeded 120 months, which was the statutory maximum; therefore, the guidelines range defaulted to the statutory maximum of 120 months. The Court varied downward from the guidelines, sentencing Carani to six years' imprisonment.

**B.    Risks of Testifying**

Carani claims that his lawyers never told him that he could receive a higher sentence if he testified at trial and was found guilty. Ex. 5. to Def.'s Pet at ¶ 3. He says, further, that he was never informed "that the choice of whether or not to testify belonged solely to me. In addition, I was never told that I would be subjecting myself to a harsher sentence if I testified and was found guilty. Instead, counsel simply told me that I had to testify so the jury could hear my defense." *Id.* at ¶ 7. Carani states that if he had known the decision was his, and that he could receive a larger sentence if he testified, then he "would never have testified." *Id.*

Carani's trial counsel state that they had multiple conversations with Carani, both before and during trial, about whether he should testify. Ex. 1 at ¶ 5; Ex. 2 at ¶ 5. Carani wanted the jury to hear his side of the story, and parts of what he wanted to convey could be communicated only through his testimony. Ex. 1 at ¶ 5. Counsel warned Carani, though, that if he testified, the outcome of the case would be substantially determined by whether the jury believed him. Ex. 1 at ¶ 5; Ex. 2 at ¶ 5. Berkson told Carani that if the jury did not believe him, they would not acquit him. Ex. 2 at ¶ 5. Counsel talked with Carani about various reasons the jury might react negatively to him, including his appearance. Ex. 1 at ¶ 5. Both attorneys also told Carani that there was an additional risk that if he were convicted, and the Court found he committed perjury, he could get more time in jail. Ex. 1 at ¶ 5; Ex. 2 at ¶ 5. The lawyers told Carani repeatedly that this was his decision, and his decision alone. *Id.* Berkson told Carani that on this issue of whether Carani would testify, "this was not a democracy; only one person had a vote, and that was Mr. Carani." Ex. 2 at ¶ 5. Trial counsel never told Carani that he had to testify, or that the decision was anyone's but his. Ex. 1 at ¶ 5; Ex. 2 at ¶ 5.

Carani elected to testify. During his testimony, he denied knowingly downloading or possessing child pornography. He claimed that any child pornography on his computer got there accidentally, when he was trying to download music. At sentencing, the Court determined that Carani lied during his testimony, and imposed a two-level increase for obstructing justice.

**ARGUMENT**

The government's January 28, 2008 submission sets forth the legal principles that apply to Carani's ineffective-assistance claims. Resp. at 3-4. In sum, to prevail, Carani must show that his lawyers' representation fell below an objective standard of reasonableness, and that their faulty performance prejudiced him. *Id.* A hearing is unnecessary if the record as a whole conclusively shows that the prisoner is not entitled to relief. *Id.* Carani cannot satisfy either ground, and no hearing is necessary.

**A.     The Record Undermines Carani's Current Claim that He Would Have Pled Guilty, and He Cannot Show Prejudice**

Carani asks this Court to accept his assertion that he would have pled guilty if he had known the risks of going to trial. In his trial testimony, however, Carani aggressively denied any interest in child pornography, claiming that any such material appeared on his computer by accident. He blamed faulty computer software, and accused the federal agents of lying about his confession to searching for, downloading, and possessing child pornography. At sentencing, too, Carani firmly proclaimed his innocence, and denied the charges. Even without considering the affidavits now submitted by Carani's defense counsel, this Court can and should reject Carani's affidavit as implausible and incredible, given the full record and Carani's steadfast denials of guilt.

In *United States v. Gallo-Vasquez*, 402 F.3d 793, 798 (7th Cir. 2005), the defendant claimed, as Carani does here, that he received ineffective assistance of counsel due to his lawyer's conduct during plea negotiations. Gallo-Vasquez asserted that it was his lawyer

who persuaded him to go to trial, and if Gallo-Vasquez had been competently advised, he would have pled guilty. *Id.* The Seventh Circuit found that the district court properly rejected Gallo-Vasquez's claim without a hearing, because Gallo-Vasquez's behavior showed – contrary to unsupported assertions in his Section 2255 affidavit – he would not have admitted his guilt and pled guilty. *Id.* Among other things, Gallo-Vasquez "went to trial, took the stand, and steadfastly proclaimed his innocence. This record does not leave room for a reasonable probability that, but for counsel's advice, Gallo-Vasquez would have accepted a plea agreement." *Id.* at 798-99. The same is true for Carani, whose current insistence that he would have admitted his guilt instead of going to trial conflicts mightily with his consistent denials of responsibility.

Nor can Carani show prejudice, as a matter of law. This is not a case where Carani pled guilty under purportedly faulty advice, and is claiming he could have been acquitted at a trial; here, Carani fully exercised his trial rights. He was convicted of one count, possession of child pornography, and was sentenced on that one count. Carani himself concedes that the only thing he would have done differently if fully advised of the trial risks is to plead guilty. Ex. 5 to Def.'s Pet. at ¶ 3 ("I would have either accepted the government's plea agreement or entered a plea of guilty without the agreement."). But he cannot legitimately claim that he would have gotten a better sentencing result by such a plea, because the Court sentenced Carani to 72 months' imprisonment, which was well below the government's draft plea proposal (151-188 months, *see* Ex. 3 at ¶ 6) and what turned out to be the applicable Guidelines range (120 months). Thus, there is no prejudice: either way,

Carani was convicted, and received less time than the Guidelines counseled and that the government was suggesting in a pre-trial draft plea.

Taking defense counsel's affidavits into account, it is even more clear that Carani is not entitled to relief. Carani's attorneys discussed the government's draft plea agreement with Carani in detail, and warned him of the substantial risks Carani would face if he proceeded to trial. Exs. 1-2. They never promised him an acquittal, or advised him to reject a plea. *Id.* Carani's attorneys' affidavits are fully consistent with the record as a whole, in contrast to Carani's affidavit, which offers no details and conflicts with his sworn statements to the Court at trial and at sentencing. *Gallo-Vasquez*, 402 F.3d at 798-99; *see also Galbraith v. United States*, 313 F.3d 1001, 1009-10 (7th Cir. 2002) (affidavit supporting Section 2255 petition must contain specific details showing that petitioner has "actual proof" of attorney's misconduct before evidentiary hearing is required).

**B.    Carani Cannot Establish Ineffective Assistance Linked to His Trial Testimony**

Carani does not and cannot claim that his attorneys' alleged ineffective assistance deprived him of his constitutional right to testify. Here, Carani exercised his right to testify. He complains, instead, that he would not have testified if he had known he was risking an increased sentence, or if he knew the decision was his alone.

On the latter argument, the Court can and should deny Carani's petition as a matter of law. A defense attorney's failure to tell a defendant that it is solely his decision whether to testify is not a deprivation of constitutional rights, and cannot sustain an ineffective assistance claim. *Taylor v. United States*, 287 F.3d 658, 661-63 (7th Cir. 2002) (a defense

lawyer's alleged failure to inform defendant that it was defendant's choice alone whether to testify does not constitute ineffective assistance). Thus, even though defense counsels' affidavits show that they *did* tell Carani the choice was his, it does not matter for purposes of resolving Carani's Section 2255 petition.

Carani's other argument can also be denied without reference to defense counsels' affidavits, because Carani cannot show prejudice. The two-level enhancement Carani received was because of his own decision to lie on the witness stand. Carani does not claim in his affidavit (nor could he, credibly) that Gurland and Berkson told him to commit perjury. Therefore, the obstruction enhancement resulted not from any failure of advice on counsel's part, but instead, from Carani's own choice to give false testimony.

In any event, Gurland's and Berkson's affidavits show that they *did* advise Carani of the risks of testifying. His petition should be denied.

Dated: April 10, 2008            Respectfully submitted,

                                           PATRICK J. FITZGERALD
                                           United States Attorney

By:    s/ Julie B. Ruder
        JULIE B. RUDER
        Assistant United States Attorney
        219 South Dearborn Street
        Chicago, Illinois 60604
        (312) 886-1317

## CERTIFICATE OF SERVICE

The undersigned Assistant United States Attorney hereby certifies that in accordance with FED. R. CRIM. P. 49, FED. R. CIV. P. 5, LR5.5, and the General Order on Electronic Case Filing (ECF), the following document:

Supplemental Response of the United States to Section 2255 Petition

was served pursuant to the district court's ECF system as to ECF filers, if any, and was sent by first-class mail on April 10, 2008, to the following non-ECF filers:

> FABIO CARANI
> Reg. No. 21827-424
> FCI Ashland
> P.O. Box 6001
> Ashland, KY 41105

> s/ Julie B. Ruder
> JULIE B. RUDER
> Assistant United States Attorney
> 219 South Dearborn Street
> Chicago, Illinois
> (312) 886-1317