## AFFIDAVIT

I, Carolyn P. Gurland, state the following under oath and under penalty of perjury:

1.  I was trial counsel for Fabio Carani in *United States v. Carani*, 05 CR 150, along with Dennis Berkson. I am submitting this affidavit in connection with *Carani v. United States*, 07 CV 7040, which is Mr. Carani's petition to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. I understand that Judge Grady ruled in a March 12, 2008 Order that because Mr. Carani has made allegations concerning alleged deficiencies in my performance as his counsel, Mr. Carani has waived the attorney-client privilege.

2.  Before Mr. Carani was indicted, the government sent a proposed plea agreement. Mr. Berkson and I met with Mr. Carani at Ed Genson's office, and went over the plea agreement with Mr. Carani in detail. We showed him the proposed plea agreement, and discussed it at length. My recollection is that we, the attorneys, did not perceive it to be a very good offer, because it carried a lot of jail time. Mr. Carani was also disappointed in the plea offer, and kept saying that he could not believe that the government was asking for so much jail time on a plea. Mr. Berkson and I discussed with Mr. Carani the possible reasons why the government was insisting on a substantial jail sentence, even on a plea agreement.

3.  Even though the plea offer was not attractive, Mr. Berkson and I told Mr. Carani during the same meeting that there were many risks in going to trial. In particular, we told Mr. Carani that it was impossible to predict with certainty whether we would win or lose, and it would be up to the jury to decide the case. We told Mr. Carani that the jury would probably see the child pornography videos at issue in the case, that the trial involved emotional and difficult issues, and that


GOVERNMENT EXHIBIT 1

it would be hard to tell how a jury would react. We told Mr. Carani that we would ask the court to keep the child pornography videos out of evidence, so that the jury would not see them, but that this would ultimately be up to the court to decide. One of the other trial risks we discussed with Mr. Carani was his handwritten statement, which the government had provided in discovery. We told Mr. Carani that the statement was a disaster, because he had admitted so much; nevertheless, we told Mr. Carani that there were some ambiguities in the statement that we could call to a jury's attention, and we could challenge the circumstances under which the statement was made. Still, Mr. Berkson and I told Mr. Carani that his handwritten statement increased the risks in a trial.

4. Mr. Carani ultimately decided that he did not want to take the plea agreement, and wanted to go to trial. This was his decision, not counsel's. I never told Mr. Carani to reject the plea agreement, and I never told him he would be acquitted at trial.

5. As to Mr. Carani's testifying at trial, Mr. Berkson and I had multiple conversations with Mr. Carani, both before and during trial, about whether he should testify. Mr. Carani wanted to tell his side of the story at trial, and Mr. Berkson and I did tell Mr. Carani that certain aspects of what he wanted to convey could be communicated only through his testimony. However, Mr. Berkson and I discussed with Mr. Carani at length the many risks involved in testifying at trial. We told him that if he testified, the case would largely come down to a jury determination of his credibility, and the jury may ignore the other evidence we presented, such as the defense computer expert, and points we established through government witnesses. We told Mr. Carani that if the jury did not believe him, or reacted negatively to him, he was likely to lose. On the question of whether the jury would like Mr. Carani, Mr. Berkson and I spoke to him concerning his appearance, and we talked about the fact that the jury might just not like him, and that could affect the outcome of his

case, which was a sad reality in the jury system. We also informed Mr. Carani that there was an additional risk that if he were convicted, and the trial judge found that he had committed perjury when he testified, his sentence could be increased for obstruction of justice. Mr. Carani struggled with the decision whether to testify, and discussed these various risks with me and Mr. Berkson numerous times before finally deciding to testify. Mr. Berkson and I counseled Mr. Carani repeatedly that this was his decision, and his decision alone. We never told him that he had to testify, or that the decision was anyone's but his.

FURTHER AFFIANT SAYETH NOT.

*Carolyn P. Gurland*
Carolyn P. Gurland

Dated: March 25, 2008