## AFFIDAVIT

I, Dennis A. Berkson, state the following under oath and under penalty of perjury:

1. I was trial counsel for Fabio Carani in *United States v. Carani*, 05 CR 150, along with Carolyn Gurland. I am submitting this affidavit in connection with *Carani v. United States*, 07 CV 7040, which is Mr. Carani's petition to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. I understand that Judge Grady ruled in a March 12, 2008 Order that because Mr. Carani has made allegations concerning alleged deficiencies in my performance as his counsel, Mr. Carani has waived the attorney-client privilege.

2. The government made a plea offer to Mr. Carani before trial, and the proposed plea carried substantial jail time. Ms. Gurland and I communicated the plea offer to Mr. Carani and discussed it with him. I do remember going over the government's offer with Mr. Carani in detail. Mr. Carani was not interested in the government's offer because of the high amount of jail time, and he vehemently rejected the notion that he should spend so much time in prison when, according to Mr. Carani, he was innocent.

3. Even though the plea offer was not attractive, Ms. Gurland and I told Mr. Carani during the same meeting that there were many risks in going to trial. We emphasized the fact that from our perspective, juries do not like defendants in child exploitation cases, and these are terrible cases to try. We told Mr. Carani that when the jury saw the tapes of the child pornography, they would hate it, and it's as if there's a presumption of guilt.

4. Despite these risks, Mr. Carani was firm that he was not interested in the government's plea offer because the jail time was so high, and he preferred to go to trial. This was

1


GOVERNMENT EXHIBIT 2

his decision, not counsel's. I never told Mr. Carani to reject the plea agreement, and I never told him he would be acquitted at trial.

5.  As to Mr. Carani's testifying at trial, Ms. Gurland and I had multiple conversations with Mr. Carani, both before and during trial, about whether he should testify. I emphasized to Mr. Carani that if he took the stand, the outcome of the case would hang heavily on whether the jury believed him; I told him that this was a very significant risk. I told Mr. Carani that if the jury did not believe him, they would not acquit him. Ms. Gurland and I also explained that if he took the stand and the judge believed he was lying, he could get more time in jail. We specifically explained how the sentencing guidelines worked, and the fact that there could be a two-level increase for obstructing justice. Ms. Gurland and I counseled Mr. Carani repeatedly that this was his decision, and his decision alone. In particular, I recall telling him that on the issue of whether he would testify, this was not a democracy; only one person had a vote, and that was Mr. Carani. Ms. Gurland and I never told Mr. Carani that he had to testify, or that the decision was anyone's but his.

6.  I can state that each and every time I discussed any matter of importance with Mr. Carani, particularly any offer from the Government, I was with Ms. Gurland. I specifically did this so that there would be no question about what was said in each and every conversation. In each meeting, Ms. Gurland and I could then verify what was said to Mr. Carani and what he said to us.

FURTHER AFFIANT SAYETH NOT.

_____
Dennis A. Berkson

Dated: March 24, 2008