FILED
MAY 14 2008
May 14 2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FABIO CARANI, | Civ. A. No. 07-C-7040 |
| Petitioner, | (Crim. No. 05-CR-150) |
| vs. | (Judge Grady) |
| UNITED STATES OF AMERICA, | DECLARATION OF |
| Respondent. | FABIO CARANI |

I, Fabio Carani, hereby declare as follows:

1. I am the petitioner in the above-styled action, and I was the defendant in the underlying criminal action.

2. I have received the Supplemental Response of the United States to Section 2255 Petition. The Supplemental Response includes the Affidavit of Carolyn P. Gurland, and the Affidavit of Dennis A. Berkson as Government Exhibits 1 and 2 respectively.

3. Ms. Gurland and Mr. Berkson were my attorneys in the underlying criminal proceedings that are related to my Motion Under 28 U.S.C. Section 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. Among the issues raised in my section 2255 petition is whether their representation was constitutionally sufficient.

4. I have reviewed both Ms. Gurland's and Mr. Berkson's affidavits, and I have noted that they do not match my recollection of particular events. This declaration is prepared and offered to identify those points of disagreement.

5. Both of the affidavits discuss the government's proposed

plea agreement and describe a meeting between myself, Ms. Gurland, and Mr. Berkson during which the proposed plea agreement was discussed at length and in detail. Neither affidavit provides the date on which this meeting occurred.

6. Mr. Berkson was not retained as co-counsel in my case until after the decision to reject the government's plea offer and to proceed to trial had been made. I had initially retained Ed Genson's law office (in which Ms. Gurland is an attorney) after my initial contact with the police. The plea offer was proposed and provided to Ms. Gurland in April 2005. Ms. Gurland initially handled my case by herself as sole counsel, but requested that I hire an additional attorney to assist with the case during the trial. After the proposed plea agreement was rejected and preparation for the trail was beginning, I hired Mr. Berkson as a direct result of Ms. Gurland's request.

7. Ms. Gurland and Mr. Berkson were not associated in the same law office. When the decision was made to bring in an additional attorney, the decision was left to me to choose the attorney; and I made payments to the attorney (Mr. Berkson) directly, not through Ed Genson's law office. Mr. Berkson was recommended to me by Ed Genson, who informed me that he had worked with Mr. Berkson before. Mr. Berkson was not in any meetings with me, and was not retained to represent me, until after the decision to go to trial had been made.

8. It is my recollection that Mr. Berkson was not brought into the case until August. The fee for Mr. Berkson's services was paid in three payments: one by myself on August 11, 2005;

another by my parents on August 11, 2005; and a third payment that was made by my parents on August 25, 2005. A photocopy of each of the three checks used to make these payments to Mr. Berkson is attached to this declaration, and is incorporated into this declaration by reference.

9. I do not have any recollection of the meeting that Ms. Gurland describes in paragraph 2 of her affidavit, nor the discussion that paragraph 2 describes.

10. I do not recall Mr. Berkson ever going over the government's proposed plea agreement with me either generally, or in detail. I would have found any discussion of the proposed plea agreement with Mr. Berkson unusual; because when he was hired, the trial was only a few weeks away and there was time-pressure to prepare for the trial. It would have seemed unusual to me that Mr. Berkson would discuss a proposed plea agreement that had been rejected, especially when he had been hired specifically because my case was about to go to trial.

11. I do recall discussing the plea agreement with Ms. Gurland during a telephone conversation. Ms. Gurland expressed her feelings that I was innocent of the charges, that there was not evidence that supported the government's allegations, and that she was of the opinion that the proposed plea agreement should be rejected. Ms. Gurland did not discuss the risks of not accepting the plea agreement during the telephone conversation. The telephone conversation was not very long.

12. Other than the telephone conversation with Ms. Gurland

I do not recall ever having any conversation with Ms. Gurland or Mr. Berkson regarding the weight of the evidence that the government could be expected to present, or how my handwritten statement might affect the jury's decision. I do not recall any conversations with either attorney regarding the risks of going to trial that Ms. Gurland or Mr. Berkson state in their affidavits.

13. My recollection is that Mr. Berkson was hired in early-August and that my trial began in late-August or early-September. I did meet frequently with Ms. Gurland and Mr. Berkson in the approximately four weeks leading up to my trial. Our meetings took place in Ed Genson's office.

14. During the August meetings, I asked Mr. Berkson and Ms. Gurland if I had to testify at the trial. My memory is that the issue came up just a couple of weeks before the trial began. I did not want to testify. I had a diagnosed medical condition related to anxiety. I told Mr. Berkson and Ms. Gurland that I did not want to testify because I was afraid that the anxiety would hurt my testimony.

15. Mr. Berkson said that I had to go onto the stand and tell my side of the story, that this was the only way that I could win. Ms. Gurland did not say very much about the issue, but Mr. Berkson expressed strong feelings that this was something that had to be done.

16. Neither Mr. Berkson nor Ms. Gurland discussed any downside to me testifying at the trial with me. They did not

inform me that the law never requires a criminal defendant to testify at his trial. They did not tell me that if I did not testify that the jury could be instructed that it could not draw an inference that I was guilty because I did not testify at my trial. They did tell me that the impression that I made on the jury would be important.

    I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief. Executed May 2, 2008.

                                                                 Fabio Carani

**Check 1664**
FABIO CARANI
533 ONWENTSIA AVE.
HIGHLAND PARK, IL 60035
70-2260/719
8263221
DATE 8/11/05
PAY TO THE ORDER OF Dennis A. Berkson    $ 10,000.00
Ten thousand — DOLLARS
First Bank of Highland Park
MEMO    Fabio Carani

**Check 345**
LUCIANO CARANI
GIOVANNINA CARANI
604 SKOKIE
HIGHLAND PARK, IL 60035
70-2260/719
8276844
DATE 8/11/05
PAY TO THE ORDER OF Dennis A. Berkson    $ 20,000.00
Twenty thousand — DOLLARS
First Bank of Highland Park
MEMO    Luciano Carani

**Check 351**
LUCIANO CARANI
GIOVANNINA CARANI
604 SKOKIE
HIGHLAND PARK, IL 60035
70-2260/719
8276844
DATE 8/25/05
PAY TO THE ORDER OF Dennis Berkson    $ 10,000.00
Ten thousand — DOLLARS
First Bank of Highland Park
MEMO    Carani

**CERTIFICATE OF SERVICE**

The undersigned certifies that a true and correct copy of the foregoing Motion to Expand the Record, and the Declaration of Fabio Carani that is an attachment to the declaration, was deposited in the mail system at the Federal Correctional Institution, Ashland, Kentucky ("FCI-Ashland"), in the manner prescribed for legal mail, including prepayment of first-class postage, addressed to:

> AUSA Julie B. Ruder
> Office of the United States Attorney
> Northern District of Illinois
> 219 South Dearborn Street
> Chicago, Illinois  60604

on the 7Th day of May, 2008.

*Fabio Carani*
Fabio Carani, pro se
21827-424   R
FCI-Ashland
Post Office Box 6001
Ashland, Kentucky 41105-6001